Sadie Wilckes v. Commissioner. Estate of Ferdinand Wilckes, Deceased, Passaic National Bank and Trust Company, Executor v. Commissioner.
Wilckes v. Commissioner
Docket Nos. 111842, 102551, 106916, 111841, 106917.
United States Tax Court
1943 Tax Ct. Memo LEXIS 105; 2 T.C.M. (CCH) 809; T.C.M. (RIA) 43430; September 22, 1943
*105 In 1934 petitioner created a trust directing that $30,000 per annum of the net income be paid to her during her life and the balance be distributed annually to four trusts created for the benefit of her daughters. The trustees included, in the fiduciary returns filed by them, the aggregate net income of the trust and deducted the aggregate amount paid to petitioner and the four trusts for her daughters. Held, that, inasmuch as the amount to be paid to petitioner was payable only out of the net income of the trust, the amounts received by her during the taxable years were not "received as an annuity" and hence, were not to be taxed as provided in section 22 (b) of the Revenue Act of 1936 and corresponding sections. Held further, it is immaterial that the Commissioner, in computing the value of the property transferred by petitioner to the trust for the purpose of computing her gift tax liability, deducted therefrom an amount assumed to be the value of her right to receive $30,000 per annum for and during her life. Edmund S. Kochersperger, Esq., 811 Investment Bldg., Washington, D.C., for the petitioners. Robert S. Garnett, Esq., for the respondent. MELLOTT
Memorandum Opinion
*106 MELLOTT, Judge: These consolidated proceedings involve deficiencies in income tax as set out in the margin. [1] They were submitted upon a stipulation of facts and exhibits and the facts are found to be as stipulated. The parties agree that the issue in the proceedings docketed in the name of the estate need not be decided. It is whether the decedent was entitled to a personal exemption or whether it should be allowed to his wife, the other petitioner herein. The essence of the agreement of the parties is that the deficiencies in tax are to be approved in the proceedings instituted by the estate if those determined against the other petitioner are approved; but if she prevails upon the issue raised by her, then the personal exemption is to be allowed to the estate with the result that the deficiencies in tax as to it are to be set aside. *107 Sadie Wilckes will hereinafter be referred to as the petitioner. The sole issue to be determined is whether respondent erred in including in her gross income for each of the years 1937 to 1940, both inclusive, the sum of $30,000 received by her from the trustees of a trust. The material facts will be summarized. [The Facts] Ferdinand Wilckes and petitioner were husband and wife throughout the period from prior to September 15, 1921, and through the calendar year 1940. Wilckes died July 14, 1941. Four daughters had been born the issue of the marriage, all having been born before September 15, 1921, and all being alive on December 30, 1934, and through 1940. On September 15, 1921, petitioner was the owner of all the capital stock of The Constance Co., a New Jersey corporation. On that date she executed a trust, naming Passaic Trust and Safe Deposit Co. as a trustee. Passaic National Bank and Trust Co. became its successor. At the time of the execution of the trust she delivered to the trustee the certificates covering all of her stock in The Constance Co., endorsed in blank. She continued as the record owner of the stock on the books of the company, however, voted it at the *108 annual meetings and throughout the period until December 30, 1934, was paid in cash all dividends declared on the stock. The sole duties performed by the trustee during this period consisted of holding the stock certificates. By the terms of the trust of September 15, 1921, petitioner provided inter alia that upon the death of her husband she would assign and transfer the Constance Co. stock to the trustees and cause it to be duly transferred upon the books of the corporation. Thereafter the dividends on the stock would be received by the trustees and disbursed by them, one-half to petitioner and one-eighth to each of her four daughters during petitioner's lifetime and so long as she remained unmarried; but in the event of her remarriage one-fifth would be distributed to her and one-fifth to each of her four daughters. The trust instrument further provided that if the dividends on the stock in any year proved to be less than $40,000 the trustees, in their discretion, could cause the corporation to lend petitioner a sum sufficient to make her minimum annual receipt $20,000 if she was then unmarried and $8,000 if she had remarried. In like manner each daughter might receive up *109 to $5,000 if the mother was unmarried and $8,000 if she had remarried. Upon the death of petitioner the trustees were to distribute all the capital stock equally among her then living daughters or the issue of any who should then be deceased. Under date of December 31, 1934, petitioner, as party of the first part, and Passaic National Bank and Trust Company, Ferdinand Wilckes, and Frederick S. Kellogg, as parties of the second part (trustees) executed a document hereinafter sometimes referred to as the trust of December 31, 1934. On the same date stock certificates representing the entire capital stock of The Constance Co. except two qualifying shares were delivered to the trustees and the old stock certificates were cancelled. This instrument provided that in addition to the Sadie Wilckes trust "there shall be four other separate and particular trusts: - One for Constance Wilckes, daughter of Sadie Wilckes, to be known as the Constance trust; one for Ruth Wilckes, * * *, to be known as the Ruth trust; one for Irma Wilckes, * * *, to be known as the Irma trust; and one for Renata Wilckes, * * *, to be known as the Renata trust." The last-mentioned trust instrument recited that petitioner, *110 because of the greater maturity of her daughters, desired "by diminution of her equitable rights, to enlarge and accelerate the enjoyment of the future interest given to" them by the 1921 indenture. The trusts created by the 1921 indenture were "confirmed except only as the beneficial interest" of the daughters were "accelerated and enlarged" by the later one. The stock under the trust of December 31, 1934, was "to be held and disposed of by the * * * trustees" for the uses and purposes enumerated, which, among others were: (a) Except as herein otherwise provided, my said trustees, or successor trustees, shall from time to time invest and reinvest the property in their hands and collect the rents, issues and profits thereof and from said rents, issues and profits they shall deduct all costs, insurance, real estate and personal property taxes, charges and expenses of the administration and management of the Sadie Wilckes Trust. (b) The net income remaining after payment of the items set forth in the preceding paragraph (a) shall be charged with the payment to me so long as I shall live and to Ferdinand Wilckes so long as he shall survive me, of the sum of $30,000.00 per annum and *111 with any unpaid deficiencies in said annual sum of $30,000.00. The excess above $30,000 was to be distributed annually, in equal shares, to the four trusts for the benefit of petitioner's daughters. Upon the death of petitioner and her husband the trustees were "to divide whatever shall remain of the Sadie Wilckes Trust" among the trusts for the benefit of her daughters. The trustees under the trust of December 31, 1934, thereafter voted the stock of The Constance Co. and received payment of all dividends that were declared and paid upon it. From and after November 30, 1938, the trustees became the owners of all the stock of Concord Trading Corporation by substitution for all the stock of the Constance Company and thereafter voted it and received all dividends upon it. During the years 1937 to 1940, inclusive, the Constance Co. and the Concord Trading Corporation were personal holding companies and filed returns as such. For the years 1937 to 1940 the trustees received income, as represented in the dividends declared and paid to them by the holding companies, in the following amounts: Year
Amount
1937
$82,000.00
1938
52,000.00
1939
60,000.00
1940
58,000.00
In accordance *112 with the provisions of the trust of December 31, 1934, the trustees distributed to petitioner $30,000 during each of the years 1937, 1938, 1939 and 1940. They also made distributions to the trusts created for the benefit of the daughters. At no time since the creation of the trust have the trustees ever invaded the corpus or used any of it to effectuate payment to petitioner of the amounts required to be paid to her. The trustees filed fiduciary income tax returns for the years 1937, 1938, 1939 and 1940 in which they claimed as deductions the total income of the trust which had been distributed to the various beneficiaries. On February 26, 1935, petitioner filed a gift tax return for the calendar year 1934, showing gifts to the trustees of the trusts created for the benefit of her four daughters of cash in the amount of $60,000. Attached to the return were copies of the trust instruments referred to above. On June 20, 1937, the Commissioner notified petitioner that there was a deficiency in gift tax in the amount of $39,761.97 based upon the following computation: Stock of The Constance Company
$899,712.24
Cash
60,000.00
Total
$959,712.24
Less present value of annuity re-
served to donor for life
365,375.70
Total gifts
$594,336.54
*113 The item of $365,375.70 was explained in the notice of deficiency as follows: The computation of the present value of the annuity reserved by the donor for life is based on annuity tables incorporated in Regulations 80 and is adhered to. Petitioner did not file any petition with the United States Board of Tax Appeals for a redetermination of the gift tax deficiency, but, following an assessment, paid the deficiency with interest on November 6, 1937, in the aggregate amount of $43,842.92. On October 29, 1940, she filed a claim for refund of this amount. The claim for refund was disallowed on August 29, 1941. In each of her income tax returns for the years 1937, 1938, 1939 and 1940 petitioner treated the $30,000 received from the trust of December 31, 1934, as an annuity and included in her taxable income 3 percent of $365,375.70 or $10,961.27. In determining the deficiencies the respondent included the entire amount received by her from the trust during each year, viz., $30,000 in her gross income. [Opinion] Petitioner's theory, as expressed in schedules attached to her returns and as urged upon brief, is that if the Commissioner is correct "regarding his determination of *114 gift taxes for 1934 and * * * [her] possession of an annuity, then * * * [her] reportable income from that source * * * is 3% of that cost by force of the provisions of Revenue Act of 1936, Section 22 (b) (2)." The section relied upon is shown in the margin. [2]
*115 The apparent reasonableness of this contention loses much of its force when it is borne in mind that the trustees selected by petitioner took, as deductions from the gross income of the trusts being administered by them, not only the amounts paid to the daughters during the taxable years but also the $30,000 paid to petitioner during each year. We do not intimate that this was improper; for it seems to be in accord with Section 162 (b) of the Revenue Act of 1936. [3] But if petitioner is upheld approximately two-thirds of the amount received by her from the trust created by her will altogether escape the income tax. This result should be approved only if clearly justified under the applicable sections of the Revenue Act, as construed by the decisions. *116 The income of a trust is generally taxable to the recipient. . "The evident general purpose of the statute was to tax in some way the whole income of all trust estates. * * * Certainly, Congress did not intend any income from a trust should escape taxation unless definitely exempted." . Petitioner's claim for exemption is bottomed solely upon section 22 (b) (2), supra; so it may be sustained only if the amounts were, as she assumes, "received as an annuity." It is clear that the amounts were trust income. They were all dividends upon the stock transferred by petitioner to her trustees, they were all received by the trustees and turned over to the beneficiaries, and the trust instruments leave no doubt that the trustees properly construed the documents under which they functioned. The expressed intent of the settlor in the trust of December 31, 1934, is that "the net income remaining after payment of the items set forth * * * [in the preceding paragraphs, expenses and taxes] shall be charged with the payment" to her of $30,000 per annum so long as *117 she shall live. While this tribunal and some of the Circuit Court of Appeal have held that a donor of property may so phrase his gift as to reserve specified payments to himself for life, in which event he is to be permitted to report his periodic receipts under section 22 (b) (2) supra, cf. , affd., , certiorari denied , in every case the amount has been payable, absolutely, unconditionally, and regardless of the income actually realized from the property transferred. Cf. ; ; . This was true in all of the cases cited by petitioner. The essence of an annuity is that it is to be paid annually (or at stated intervals) absolutely and without contingency. It is immaterial that it is actually paid out of income. . The test is whether it is payable in any event. *118 Applying this test it has been held that a provision in a trust instrument authorizing the trustees to pay to a beneficiary portions of the principal of the trust property in case they believe her income to be insufficient for her personal needs is not sufficient to constitute an annuity, ; nor is a provision authorizing trustees, in their discretion, "to trench upon" corpus, , since, if they decide not to do so, the payments need not be made. These are but a few of the welter of cases bearing upon the general subject of the taxation of trust income or annuities, but they serve to illustrate the applicable principles. The directions given by petitioner to her trustees were definite and specific. She was to be paid only out of income. While it is no doubt true that she, as urged in her reply brief, may have felt absolutely certain she would be paid $30,000 each year throughout her life, we cannot assume, for present purposes, that this would be so. There was no expressed intention that capital should be invaded, if necessary to make the required *119 payments. All payments were required to be made, and were made, out of income. In our judgment the trustees correctly treated them as payments out of the income of the trust under section 162, supra. By a parity of reasoning respondent did not err in including them in petitioner's gross income. Whether the responsible officers of the Bureau of Internal Revenue correctly determined petitioner's gift tax liability in connection with the transfer made by her in 1934 is not before us. While the gift tax and the estate tax are in pari materia and are to be considered together, , the gift tax has little relation to the income tax. If the Bureau erred in determining that petitioner had reserved an "annuity" for herself in connection with the transfer to the trust, the mistake probably inured to her benefit rather than to her detriment. However that may be, its determination in the gift tax controversy, even though acquiesced in by petitioner, cannot affect the present issue. Respondent, in our judgment, committed no error in determining the deficiencies in tax against petitioner. Since the parties have *120 agreed that the deficiencies against the estate of her deceased husband are correct unless her tax liability is less than determined, it follows that all of the deficiencies in tax must be approved. Decision will be entered for the respondent. Footnotes
1. ↩
Docket No.
Year
Deficiency
Sadie Wilckes
102551
1937
$3,661.27
Sadie Wilckes
106916
1938
2,753.86
Sadie Wilckes
106916
1939
2,744.49
Sadie Wilckes
111842
1940
4,440.43
Estate of Ferdinand Wilckes
106917
1938
361.95
Estate of Ferdinand Wilckes
106917
1939
401.44
Estate of Ferdinand Wilckes
111841
1940
536.67
2. SEC. 22. GROSS INCOME. * * * * *
(b) Exclusions From Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this title: * * * * *
(2) Annuities, etc. - Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this title or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity. In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, endowment, or annuity contract, or any interest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) of this paragraph;↩
3. SEC 162. NET INCOME. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * * * *
(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year;↩